634 P.2d 1234

John SCOTT, Petitioner,

v.

John F. RIZZO, Respondent.

Sidney C. CLAYMORE,
Plaintiff-Appellant,

v.

CITY OF ALBUQUERQUE,
Defendant-Appellee.

Paul J. JORDAN, Plaintiff-Appellant,

v.

CITY OF ALBUQUERQUE, et al.,
Defendants-Appellees.

Max D. McCREARY, Petitioner,

v.

Paul J. JORDAN, Respondent.

CITY OF ALBUQUERQUE, Petitioner,

v.

Sidney C. CLAYMORE, Paul Jordan,
Michael DeHerrera and Max D.
McCreary, Respondents.

No. 13235, 13442, 13450 and 13451.

Supreme Court of New Mexico.

Feb. 12, 1981.

we adopt in toto the opinion authored by Judge Walters of the Court of Appeals thereby adopting comparative negligence as a recognized legal doctrine in New Mexico. While this marks a significant change in the law of negligence, we feel that it will improve the administration of justice. We have held before that long-term adherence to a rule does not, by itself, justify its continuance if justice demands its abolition. "Merely because a court made rule has been in effect for many years does not render it invulnerable to judicial attack once it reaches a point of obsolescence." *Hicks v. State,* 88 N.M. 588, 544 P.2d 1153 (1975). *See also, Flores v. Flores,* 84 N.M. 601, 506 P.2d 345 (Ct.App.1973); *State v. Gunzelman,* 85 N.M. 295, 512 P.2d 55 (1973); *Alexander v. Delgado,* 84 N.M. 717, 507 P.2d 778 (1973); *Stang v. Hertz Corporation,* 83 N.M. 730, 497 P.2d 732 (1972); *State ex rel. Reynolds v. Molybdenum Corp. of Amer.,* 83 N.M. 690, 496 P.2d 1086 (1972); *Williamson v. Smith,* 83 N.M. 336, 491 P.2d 1147 (1971).

Judge Walter's opinion is an excellent analysis of the issue of comparative negligence. For this reason, we adopt the Court of Appeals' decision. We also realize that the legislature is now in session and may wish to address the issue.

EASLEY, C. J., SOSA, Senior Justice and PAYNE, FEDERICI and RIORDAN, JJ., concur.

OPINION

WALTERS, Judge.

This is a consolidated matter concerned with two plaintiffs who filed separate suits in Bernalillo County, both claiming accidental injuries caused by negligence of the respective defendants. In each case, defendants denied negligence and affirmatively alleged contributory negligence on the part of plaintiff. In each case, plaintiff moved to strike the defense of contributory negligence. The trial judge, assigned to both cases, denied the motions to strike. At the same time, the orders of denial contained the necessary language to permit application for interlocutory appeals, and

Bruce P. Moore, Thomas A. Simons, IV, Santa Fe, Miller, Stratvert, Torgerson & Brandt, Ranne B. Miller, Albuquerque, White, Koch, Kelly & McCarthy, Booker Kelly, Santa Fe, Johnson & Lanphere, D. James Sorenson, Keleher & McLeod, P. A., Robert C. Conklin, Charles A. Pharris, George R. "Pat" Bryan, III, Jeffrey L. Baker, Albuquerque, Miller, Stratvert, Torgerson & Brandt, Alan C. Torgerson, Albuquerque, Hinkel, Cox, Eaton, Coffield & Hensley, Stuart D. Shanor, Roswell, Tansey, Rosebrough, Roberts & Gerding, P. C., Byron Caton, Farmington, Peter R. Moughan, Jr., Larry D. Beall, Shaffer, Butt, Thornton & Baehr, P. C., Paul L. Butt, Deborah S. Davis, Civerolo, Hansen & Wolf, P. A., Carl J. Butkus, William H. Carpenter, Bette R. Velarde, Albuquerque.

UPON CERTIORARI

This Court granted certiorari in *Scott v. Rizzo* and in the consolidated cases of *Claymore v. City of Albuquerque* and *Jordan v. City of Albuquerque, et al.* We also granted in *Scott v. Rizzo* a motion to consolidate with the *Claymore* and *Jordan* cases. These cases involve the issue of comparative negligence. This issue has been addressed time and time again by this Court and we know and understand the importance of this doctrine. It is the decision of this Court that

proceedings in both actions were stayed. The Supreme Court granted the applications. By order, it transferred both matters to this court "with instructions to address the issues notwithstanding prior decisions."

Two recent decisions of the Supreme Court provide the perspective for this order. *Commercial U. Assur. v. Western Farm Bur., Inc.*, 93 N.M. 507, 601 P.2d 1203 (1979), referred to New Mexico's continued adherence to contributory negligence as a bar to recovery; and *City of Albuquerque v. Redding*, 93 N.M. 757, 605 P.2d 1156 (1980), referred to comparative negligence as "more enlightened." There would have been no need for the order unless the question of contributory negligence versus comparative negligence was open. We view the Supreme Court order as directing us to decide the question as if we were writing on a blank slate.

We are asked by plaintiffs to assume, for the purpose of this appeal, that defendants were negligent, that plaintiffs were likewise negligent, and that the concurrent negligence of the adverse parties contributed proximately to the injuries sustained by plaintiffs. We approach the issue from that standpoint because it permits us to analyze the question legally and intellectually, free of any influence from other facts in either case, apparent or alleged or discussed in the briefs, at this stage of the proceedings.

The legal issue thus presented is whether New Mexico should judicially declare that the existence of contributory negligence be no longer a complete bar against a plaintiff's recovery, but that it be replaced by a system of comparative negligence which would assess damage liability directly proportionate with fault.

We hold that the doctrine of comparative negligence more equitably apportions damages and, in the interest of fundamental justice, is adopted in this jurisdiction and replaces the "all-or-nothing" rule of contributory negligence.[1]

In reaching this conclusion we have had the benefit of extensive and exhaustive briefings by the parties, by amicus Alliance of American Insurers, and by amicus New Mexico Defense Lawyers Association. Additionally, there is a plethora of written material in favor of and opposed to each doctrine. The subject has been researched and analyzed, not only in scholarly court decisions but by legal writers, almost beyond absorption.[2]

We have attempted a thorough examination of the numerous authorities, with careful attention being accorded to the arguments made on both sides of the question, and are persuaded that logic, justice, and experience compel the result we reach today.

Thus, we shall not attempt, nor do we believe it necessary, to once again discuss in depth the history, case law, and statutory developments so thoroughly dissected by others over the past five decades. Rather, as briefly as is consonant with judicial in-

1. By this we mean that the doctrine of contributory negligence no longer applies as a complete bar to recovery. In effect, contributory negligence remains a partial bar to the extent that plaintiff's negligence shall proportionately reduce the amount of damages attributable to the entire injury to which a non-negligent plaintiff would be entitled.

2. E. g., Goldberg, *Judicial Adoption of Comparative Fault in New Mexico: The Time is at Hand*, 10 N.M.L.Rev. 3 (1980); Woods, *The Quickening March of Comparative Fault*, TRIAL magazine, Nov. 1979; Heft & Heft, *Comparative Negligence Manual* (1978); Fleming, *Foreword to Comparative Negligence at Last—By Judicial Choice*, 64 Calif.L.Rev. 239 (1976); Schwartz, *Judicial Adoption of Comparative Negligence*, 51 Ind.L.J. 281 (1976); James Kalven, Keeton, Leflar, Malone and Wade, *Comments on Maki v. Frelk; Comparative v. Contributory Negligence: Should the Court or Legislature Decide*, 21 Vand.L.Rev. 889 (1968); Rosenberg, *Comparative Negligence in Arkansas: A "Before and After" Survey*, 13 Ark.L.Rev. 89 (1959); Maloney, *From Contributory to Comparative Negligence: A Needed Law Reform*, 11 U.Fla.L.Rev. 135 (1958); 2 F. Harper & F. James, *The Law of Torts*, §§ 21.1–22.3 (1956); Prosser, *Comparative Negligence*, 51 Mich.L.R. 465 (1953); Turk, *Comparative Negligence on the March*, 28 Chi-Kent L.Rev. 189 (1950); Malone, *The Formative Era of Contributory Negligence*, 41 Ill.L.Rev. 151 (1946). This list is not exhaustive.

tegrity, we consider (1) the power of the courts to adopt a comparative negligence rule; (2) the ramifications of any such adoption upon existing common-law and statutory tort liability concepts; and (3) the appropriate form of comparative negligence to be adopted. We dispose first of the jurisdictional question raised in one of the briefs.

## I.

Amicus New Mexico Defense Lawyers Association asserts at the outset that this court has no authority to decide the issue presently before us because it was improperly brought by interlocutory appeal to the Supreme Court in the first instance, and thereafter improperly referred to us by that court. The Association argues that "the interlocutory appeal [is] based on tort and is . . . . in the Court of Appeals," § 34–5–8, N.M.S.A.1978; therefore, it should not have been filed in the Supreme Court. It contends, secondly, that the relief requested requires overruling case law promulgated by the Supreme Court, and this court is without power to do so, citing *Alexander v. Delgado*, 84 N.M. 717, 507 P.2d 778 (1973).

We do not consider whether the question is properly raised. *See St. Vincent Hospital v. Salazar*, 95 N.M. 147, 619 P.2d 823 (S.Ct. 1980). Nevertheless, this argument may be answered summarily. These cases are before us for consideration by virtue of the Supreme Court's orders directing us to decide the issue "notwithstanding prior decisions." As an inferior court, we are to obey orders of the Supreme Court. *Alexander v. Delgado, supra.* This Court has no authority to review orders of the Supreme Court. *Collins v. Michelbach*, 92

N.M. 366, 588 P.2d 1041 (1979); *State v. Scott*, 90 N.M. 256, 561 P.2d 1349 (Ct.App. 1977). Thus, we do not decide the question of our jurisdiction; rather, we comply with the Supreme Court order.

## II.

The early nineteenth-century English case of *Butterfield v. Forrester*, 11 east 60, 103 Eng.Rep. 926 (K.B.1809), is traditionally accepted by most but not all commentators (see *Hoffman v. Jones*, 280 So.2d 431 (Fla. 1973), Justice Roberts' dissent) as the progenitor of the contributory negligence rule. *Butterfield* reflected the concept prevalent at the time that a plaintiff's irresponsibility in failing to use due care for his own safety erased whatever fault could be laid at defendant's feet for contributing to the injury. *See* F. Harper and F. James, Law of Torts, § 22.1 at 1198 (1956). That view flowered during the industrial revolution, with judges protective of the growth of fledgling businesses, and solicitous that material and industrial progress be unhampered by the economic burdens attending liability for negligent injury to others. They uncritically and enthusiastically embraced the judge-made common-law of *Butterfield, supra*,[3] and enabled it to gain an entrenched status in the common-law of this country. Nevertheless, as Justice Williams noted in *Placek v. City of Sterling Height*, 405 Mich. 638, 275 N.W.2d 511, 515 (1979), few writers dispute the substantial injustices suffered because of the contributory negligence doctrine; and as a result of those apparent injustices, few common-law jurisdiction, including thirty-five states in this country, have failed to repudiate the doctrine.[4] New Mexico is one of the re-

---

3. *See* Malone, *the Formative Era of Contributory Negligence*, 41 Ill.L.Rev. 151, 156–58 (1946).

4. The states adopting comparative fault are as follows: Alaska: *Kaatz v. State*, 540 P.2d 1037 (Alaska 1975); Arkansas: Ark.Stat.Ann. §§ 27–1763 to –1765 (Repl.1979); California: *Li v. Yellow Cab Co.*, 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226 (1975); Colorado: Colo.Rev. Stat. § 13–21–111 (1973 & Supp.1978); Connecticut: Conn.Gen.Stat.Ann. § 52–572h (Supp. 1979); Florida: *Hoffman v. Jones*, 280 So.2d

431 (Fla.1973); Georgia: Ga.Code Ann. §§ 94– 703 (1978), 105–603 (1968); Hawaii: Haw.Rev. Stat. § 663–31 (1976); Idaho: Idaho Code §§ 6–801, –802, –804 (1979); Kansas: Kan.Stat. Ann. § 60–258a (1976); Louisiana: La.Civ.Code Ann. art. 2323 (West 1971); Maine: Me.Rev. Stat.Ann. tit. 14 § 156 (Supp.1980); Massachusetts: Mass.Ann.Laws ch. 231 § 85 (1974); Michigan: *Placek v. City of Sterling Heights*, 405 Mich. 638, 275 N.W.2d 511 (1979); Minnesota: Minn.Stat.Ann. § 604.01 (1978); Mississippi: Miss.Code Ann. § 11–7–15 (1972); Mon-

maining fifteen states which have not done so up to the present date.

It is argued by all defendant parties and friends of the court that any adoption of comparative negligence [5] should be made by the legislature, not the courts. This is the argument which has been presented in every jurisdiction where courts have considered abolishing this anachronistic "all-or-nothing" doctrine. Despite acknowledgement that contributory negligence originated with a judicial decision, we are urged that the fundamental constitutional separation-of-powers principle insists upon abstention by the judiciary. That contention points out that the legislature has recognized the common-law rule of contributory negligence as a part of the law in this jurisdiction, because it has enacted certain statutes [6] which were intended to mesh with or provide exceptions to the traditional effect of a contributory negligence finding. Thus, they argue, the legislature has integrated the doctrine into the statutory law of New Mexico. Coupled with this proposition is the suggestion, the *sine qua non*, that because the New Mexico legislature has six times considered the subject of substituting comparative for contributory negligence in the last quarter century, and each time it has failed to enact a bill repudiating the contributory negligence defense, the court must accept the legislature's inaction as its ratification of the doctrine.

■■■ We are not persuaded by these arguments for several reasons. First, and

as we noted in *Salazar v. St. Vincent Hospital*, 95 N.M. 150, 619 P.2d 826 (Ct.App.1980), *cert. quashed* September 30, 1980, the common law remains as the rule of practice and decision in New Mexico, "except as superseded or abrogated by statute or constitution, or held to be inapplicable to conditions in New Mexico." *Ickes v. Brimhall*, 42 N.M. 412, 79 P.2d 942 (1938). We are not convinced that the conditions in New Mexico differ in any significant degree, if at all, from conditions in all common-law jurisdictions throughout the world, with the exception of fourteen other states in this country, which have abandoned the contributory negligence rule in favor of comparative negligence.

Second, the inaction of the legislature parallels its relative inaction on the matter of sovereign immunity until the judicial decision in *Hicks v. State*, 88 N.M. 588, 544 P.2d 1153 (1975). Nevertheless, the Supreme Court there said:

The doctrine of sovereign immunity has always been a judicial creation without statutory codification, and, therefore, can also be put to rest by the judiciary. [Citations omitted.] Merely because a court made rule has been in effect for many years does not render it invulnerable to judicial attack once it reaches a point of obsolescence. (88 N.M. at 589–590, 544 P.2d 1153.)

It would not be unreasonable to argue that the legislature's inaction on the several bills

tana: Mont.Code Ann. § 27–1–702 (1979); Nebraska: Neb.Rev.Stat. § 25–1151 (1979); Nevada: Nev.Rev.Stat. § 41.141 (Supp.1979); New Hampshire: N.H.Rev.Stat.Ann. § 507:7–a (Supp.1979); New Jersey: N.J.Stat.Ann. § 2A:15–5.1 to –5.3 (West Supp.1979–1980); New York: N.Y.Civ.Prac.Law §§ 1411–1413 (1978); North Dakota: N.D.Cent.Code § 9–10–07 (1975); Oklahoma: Okla.Stat.Ann. tit. 23 §§ 13, 14 (West Supp.1979–1980); Oregon: Or. Rev.Stat. §§ 18.470, 18.475, 18.480, 18.485, 18.-490 (1977); Pennsylvania: 42 Pa.Cons.Stat. Ann. § 7102 (Purdon 1980 Pamphlet); Rhode Island: R.I.Gen.Laws Ann. § 9–20–4, –4.1 (Supp.1980); South Dakota: S.D. Codified Laws § 20–9–2 (1979 Rev.); Texas: Tex.Rev. Civ.Stat.Ann. art. 2212a (Vernon's Supp.1979); Utah: Utah Code Ann. §§ 78–27–37, –38, –41 (1977); Vermont: Vt.Stat.Ann. tit. 12 § 1036

(1973); Washington: Wash.Rev.Code Ann. § 4.22.010 (Supp.1980); West Virginia: *Bradley v. Appalachian Power Co.*, 256 S.E.2d 879 (W.Va.1979); Wisconsin: Wis.Stat.Ann. § 895.-045 (West Supp.1980); Wyoming: Wyo.Stat. § 1–1–109 (1977); Puerto Rico: P.R.Laws Ann. tit. 31 § 5141 (1968).

**5.** A more appropriate term might be "comparative liability," or "comparative fault." We cast this discussion in the more familiar language of "comparative negligence" because the great bulk of the writings on the subject so refers to it.

**6.** We are referred, specifically, to §§ 28–7–4, 41–3–1, et seq., 41–4–1, et seq., 52–1–8, 52–3–7, 63–3–23, and 63–3–6, N.M.S.A.1978.

proposed is indicative of its belief that it is more appropriate for the judiciary than the legislature to open the door which the judiciary initially closed.[7] Legislative inaction may also be considered as resulting from legislative inertia. See *Comments on Maki v. Frelk*, supra, page 895. Whatever the reason, if any, for legislative inaction, that reason does not bar the judiciary from reconsidering a judge-made rule. *Hicks v. State, supra.* Similarly, legislative enactments designed to make the judge-made rule work or ameliorate its harshness cannot be taken as legislative integration of the rule into statutory law.

We hold that the contributory negligence rule has long since reached that point of obsolescence for reasons we discuss, *infra.* Moreover, since the "rule is not one made or sanctioned by the legislature, but ... depends for its origins and continued viability upon the common law," it is a rule peculiarly for the courts to change if it is no longer validly justified. *Flores v. Flores*, 84 N.M. 601, 506 P.2d 345 (Ct.App.1973). This conclusion adheres to the observation of Mr. Justice Brandeis in *Burnet v. Coronado Oil & Gas Co.*, 285 U.S. 393, 52 S.Ct. 443, 76 L.Ed. 815 (1932), at footnote 15 in *United States v. Reliable Transfer Co., Inc.*, 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975): "This court, in other appropriate contexts, has not hesitated to overrule an earlier decision and settle a matter of continuing concern, even though relief might have been obtained by legislation." (421 U.S. at 409, 95 S.Ct. at 1715, 44 L.Ed.2d at 261.)

### III.

Defendants and friends of the court assert that existing statutes, doctrines, and uniform jury instructions will be subject to confusion, uncertainty, and revision if we adopt comparative negligence. This same argument was met in *Li v. Yellow Cab. Co. of Calif.*, 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226 (1975), and *Hoffman v. Jones*, 280 So.2d 431 (Fla.1973). The contentions in those cases were similar to those made here: that application of a comparative negligence rule would impose insurmountable difficulties upon the fact-finders with respect to such concepts as contribution and indemnity among joint tortfeasors, assumption of risk, last clear chance, attractive nuisance, wilful and wanton misconduct, sudden emergency, minor plaintiffs, mitigation of damages, and other rules of the law.

We agree with the Florida and California courts that the fears of administering the doctrine are greater than the reality. Indeed, in *Zambito v. Southland Recreation Enterprises, Inc.*, 383 So.2d 989 (Fla.App. 1980), and *Blackburn v. Dorta*, 348 So.2d 287 (Fla.1977), the Florida courts have ably dealt with some of these presumed difficulties. Under comparative negligence, rules designed to ameliorate the harshness of the contributory negligence rule are no longer needed. *Kaatz v. State, supra*, footnote 4. With the adoption of comparative negligence, the last clear chance rule is abolished. *Li v. Yellow Cab. Co. of California, supra.* Also abolished is the distinction between ordinary and gross negligence. *See Gray v. Esslinger*, 46 N.M. 421, 130 P.2d 24 (1942). Assumption of risk as a form of negligence (*see Williamson v. Smith*, 83 N.M. 336, 491 P.2d 1147 (1971)), and other liability concepts based on or related to negligence of either plaintiff, defendant, or both, are subject to the comparative negligence rule.

Instructions concerning the minor plaintiff and the child under seven years embrace and elucidate when and how, in such

---

**7.** *Molitor v. Kaneland Com. Unit Dist.*, 18 Ill.2d 11, 25, 163 N.E.2d 89, 96 (1959). Two justices, in *Syroid v. Albuquerque Gravel Prod. Co.*, 86 N.M. 235, 522 P.2d 570 (1974), appear to have been willing to abolish this doctrine, recognized by the majority in *Syroid* to be a common-law creature of the courts. As pointed out by *Goldberg, supra*, at 10 N.M.L.Rev. 3, 27–28, the force of *Syroid* has been "seriously undermined" by the shift to comparative negligence, since *Syroid* was decided, in those other jurisdictions relied on by the *Syroid* court to refuse to do so. *See also, Fleming*, 64 Calif.L.Rev. at 279–280, regarding the peculiar sensitivity to and experience of the courts with the contributory negligence inequities which better equips them to recognize the need for change.

cases, theories of negligence provide a basis for liability. The comparative negligence doctrine should not affect basic preliminary questions to be answered in such cases.

We make no effort to catalog or determine how various rules will be affected by the comparative negligence doctrine. Adaptations will be made on a case-by-case basis. Our purpose is to emphasize that if negligence or negligence-related concepts are a basis for liability, the comparative negligence doctrine applies, and common sense will assist in its fair application.

The thrust of the comparative negligence doctrine is to accomplish (1) apportionment of fault between or among negligent parties whose negligence proximately causes any part of a loss or injury, and (2) apportionment of the total damages resulting from such loss or injury in proportion to the fault of each party. To reach those purposes of the doctrine, we have great faith in the ability of our state's trial judges to sort out any problems that may arise. They undoubtedly will submit special interrogatories to the jury,[8] and pending any changes by our Supreme Court in court rules or jury instructions, we recommend special interrogatories to facilitate the entry of a judgment that will conform to the jury's determination of the proper apportionment of fault. In multiple party cases, interrogatories will address the question of liability between each plaintiff and each defendant, to reflect such apportionment.

With respect to the suggestion that we should also consider the effect of the comparative negligence doctrine upon strict liability claims, we need not decide that point at this time. We do make some observations, however, relying upon the capability of the trial judge to resolve such issues when confronted with a special factual situation requiring adaptation of the rule of comparative negligence: (1) Plaintiff's "conventional" contributory negligence has been held to be inapplicable as an affirmative defense in strict liability cases. *Jasper v. Skyhook Corp.*, 89 N.M. 98, 547 P.2d 1140 (Ct.App.1976), *rev'd* on other grounds, 90 N.M. 143, 560 P.2d 934 (1977). Nevertheless, New Mexico does not equate "strict" liability with "absolute" liability; plaintiff's conduct is still a material, although limited, issue. (2) Under the view that the comparative negligence doctrine delineates a *comparative causation* analysis, some courts[9] logically have extended the application of the rule to strict liability design cases, reasoning that the consideration of the jury, under proper instructions, should be focused upon the part played by plaintiff's "misconduct" (rather than his "negligence") which contributed to the injury suffered by use of defendant's defective product. The "misconduct" phrase would embrace such defenses as assumption of risk, misuse or abnormal use of the product, or the "negligence" concept of voluntarily and unreasonably proceeding to encounter a known danger. Such an extension does not clash with these defenses previously allowed to be raised in this jurisdiction, *see, e. g., Rudisaile v. Hawk Aviation Inc.*, 92 N.M. 575, 592 P.2d 175 (1979), in strict liability actions. They simply would not be a complete bar to recovery. *Bendorf v. Volkswagenwerk Aktiengeselischaft*, 88 N.M. 355, 540 P.2d 835 (1975).

We are of the opinion that existing decisions, both in New Mexico and in thirty-five

---

8. The mechanics of special verdicts are discussed, with suggested examples provided, in the exceptionally thorough article at 60 Marquette L.Rev. 201 (1977), Decker & Decker, *Special Verdict Formulation in Wisconsin. See also* n.1., *Sun Valley Airlines, Inc. v. Avco-Lycoming Corp.*, 411 F.Supp. 598, at 600 (D.C.Idaho 1976), and *Placek v. City of Sterling Heights, supra*. The special verdict discussions provide a useful guide in framing special interrogatories under N.M.R.Civ.P. 49.

9. *Thibault v. Sears, Roebuck and Co.*, 118 N.H. 802, 395 A.2d 843 (1978); *Daly v. General Motors Corp.*, 20 Cal.3d 725, 144 Cal.Rptr. 380, 575 P.2d 1162 (1978); *Sun Valley Airlines, Inc. v. Avco-Lycoming Corp.*, 411 F.Supp. 598 (D.C. Idaho 1976); *Stevens v. Kanematsu-Gosho Co., Inc.*, 494 F.2d 367 (1st Cir. 1974); *Bentzler v. Braun*, 34 Wis.2d 362, 149 N.W.2d 626 (1967). *See also* Twerski, *From Defect to Cause to Comparative Fault: Rethinking Some Product Liability Concepts*, 60 Marquette L.Rev. 297 (1977); Restatement (Second) of Torts, § 402A, Comment n (1965).

other jurisdictions in this country, provide sufficient guidelines to permit our New Mexico trial courts to adapt and apply the comparative negligence philosophy to actual controversies and specific factual circumstances, as they arise. The presumed difficulties of doing so are outweighed by the injustices attendant upon any delay in adopting the comparative negligence (fault) rule. *See Kirby v. Larson*, 400 Mich. 585, 256 N.W.2d 400, 417–418 (1977).

## IV.

The demise of contributory negligence as a defense can be justified from several points of view. The predominant argument for its abandonment rests, of course, upon the undeniable inequity and injustice in casting an entire accidental loss upon a plaintiff whose negligence combined with another's negligence in causing the loss suffered, no matter how trifling plaintiff's negligence might be. Liability based on fault is the cornerstone of tort law, and a system such as contributory negligence which permits one of the contributing wrongdoers to avoid all liability simply does not serve any principle of fault liability.

Various inroads upon the contributory negligence defense as well as the frequently suggested jury's disregard of instructions in its attempt to ameliorate the harshness of the rule, express the convictions of jurists, lawyers, and laymen alike that justice is not achieved by the anachronistic and inequitable contributory negligence rule of law.

Convinced as we are that the almost universal trend toward comparative negligence-comparative fault principles reflects the more humane, the more fundamentally just system of apportioning liability in accordance with respective fault, we now confront the form of comparative negligence most suitable for adoption and implementation in New Mexico.

We believe, as did the United States Supreme Court [10] and other courts which have adopted the comparative negligence doctrine,[11] that the "pure" form is superior and preferable to other comparative systems.

We can anticipate that, ordinarily, where the negligence of both plaintiff and defendant will be at issue, a counterclaim will be filed. The "pure" form will not permit unjust enrichment of either party. Instead, the plaintiff's percentage of contributing fault will reduce his recovery of total damages suffered in an amount equal to his degree of fault, at the same time exposing him to liability to and recovery by defendant for injuries incurred by defendant as a result of plaintiff's proportionate negligence. Regardless of the degrees of comparative fault of the parties, the principle of requiring wrongdoers to share the losses caused, at the ratio of their respective wrongdoing, more fairly distributes the burden of fault than does any "modified" system which allows a 49% negligent plaintiff to recover 51% of his damages, but denies any recovery at all to one who is found to have contributed 50% of the total negligence. *See* Prosser, *Comparative Negligence*, 51 Mich.L.Rev. 465, 493–494 (1953).

The examples of "unfairness" in applying the pure system, cited by counsel in the briefs are not well reasoned. They posit the accident in which plaintiff, 70% at fault, suffers a $500,000 loss; and defendant, 30% at fault, sustains $40,000 in damages. Under comparative fault principles, plaintiff would recover $150,000 and defendant, $28,000. How can it be argued that such a result would be unfair, when each party would be held responsible to the other for the harm caused to that other person by his proportionate fault? It surely is a fairer allocation of liability than the "modified" forms which require plaintiff to have been less negligent than or not more than equally as negligent as defendant. Those formu-

10. *United States v. Reliable Transfer Co., Inc.*, 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975).

11. *See Placek v. City of Sterling Heights*, 405 Mich. 638, 275 N.W.2d 511 (1979). *Kaatz v.*

*State*, 540 P.2d 1037 (Alaska 1975); *Li v. Yellow Cab. Co.*, 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226 (1975); *Hoffman v. Jones*, 280 So.2d 431 (Fla.1973).

lae punish either the plaintiff or counterplaintiff who is but slightly more negligent with bearing his own loss and about one-half of the losses of the other party as well. See Keeton, et al., *Comments on Maki v. Frelk*, 21 Vand.L.Rev. 889, 911 (1968). In cases of multiple defendants, if plaintiff's individual fault exceeds the individual degree of fault of each other defendant—even though the totality of defendants' fault exceeds plaintiff's—under the "modified" concepts, plaintiff recovers nothing.

We believe the California court [12] correctly assessed the modified "50%" form as one which "simply shifts the lottery aspect of the contributory negligence rule to a different ground." We add the "gross-slight" form of comparative negligence to that appraisal, as well. Those rules do not abrogate contributory negligence; they merely slightly reduce defendant's chances of a defense verdict if there is a showing of plaintiff's contributory negligence. Pure comparative negligence denies recovery for one's own fault; it permits recovery to the extent of another's fault; and it holds all parties fully responsible for their own respective acts to the degree that those acts have caused harm.

Considering all of these reasons, we conclude that adoption of a rule of pure comparative negligence more nearly synthesizes the long-standing legal thought on the subject than any other form. We therefore hold that a pure comparative negligence standard shall supersede prior law in New Mexico, and that a plaintiff suing in negligence shall no longer be totally barred from recovery because of his contributory negligence.

### V.

The final issue to be decided is the time when and the cases to which the comparative negligence rule shall be applied. We have considered the manner in which the courts in *Hoffman v. Jones*, 280 So.2d 431 (Fla.1973); *Li v. Yellow Cab. Co., supra;*

*Kaatz v. State*, 540 P.2d 1037 (Alaska 1975), and *Placek v. City of Sterling Heights*, 405 Mich. 638, 275 N.W.2d 511 (1979), have dealt with this question, and we are of the mind that a compromise retroactivity somewhere between the extremes of those cases should prevail.

Therefore, we hold that the rule herein adopted be applicable to the instant case and all cases filed hereafter. Further, in those appropriate cases in which trial commences after the date on which this opinion becomes final, including those which may be remanded for retrial for whatever reason, comparative negligence shall be applicable. And, finally, the new rule shall be applicable to any case presently pending in the appellate courts in which the issue is preserved.

The orders denying plaintiff's motions to strike are overruled. The cases are remanded for further proceedings in which the doctrine of pure comparative negligence shall be applied. It is so ordered.

WOOD, C. J., and LOPEZ, J., concur.

---

**12.** *Li v. Yellow Cab. Co. of Calif.*, 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226, 1242 (1975).